I'm here on behalf of Barry Jones, the appellant. I did represent him in that trial level before Judge Siebel. I wish to take this opportunity on behalf of my client to thank the panel for allowing this oral argument here. And obviously we are here because the defendant is seeking relief from his 240-month sentence. That sentence was imposed by Judge Siebel as a result. Counsel, I've got a problem understanding part of the theory. His beef, his big beef is the government didn't make a 5K1.1 motion. That's correct. And I look at the plea agreement at, I think it's excerpts page 14, and in boldface it says, by this agreement the defendant is not offered or promised that a departure motion will be filed by the government. Now, I understand, anybody understands that there's a certain amount of seduction involved in these cooperation procedures. First the defendant cooperates and then the government decides if it's happy. And there's also some good faith involved by the government. But, geez, it looks like there's just no deal. What do we do with that? It's our position, Your Honor, that there was a deal. Number one, okay, it's true that they say there is no promise that he will get a 5K1. However, this is a contractual agreement. It's constituted in favor of the defendant. Offered and promised, those are buzzwords for contract law. And so when the defendant signed this plea agreement, he entered into this plea agreement with full contemplation that he was going to cooperate, that he was going to offer truthful, substantial, complete information regarding his role in this offense and anybody else. After he entered his plea, he did do that. He offered truthful, complete information and substantial according to what we allege. And the government at that point in time then had a duty, it is our position, to file their 5K1. I understand sometimes the answer to this is the safety valve. And that's not urged here, I'm sure for good reason. Because of the 851, the prior drug conviction in 1999, he wasn't eligible for the safety valve. It seems like the way this deal is worded, he has to cooperate as best he can and then the government decides whether to make a motion or not. And that's the deal he signed. That is correct, Judge, but we allege and submit with all due respect that he did comply with his portion of the plea agreement because he did provide. Let's say he gave them everything he had, fully, truthfully, and everything he knew. I still don't understand why they had a promise to file a 5K1.1 under this subparagraph B. Because, Your Honor, if you look at the sealed portion of the sentencing transcript that was filed with the court, and when you go, there's only five pages to it, but when you go to the second page, this sidebar was asked by the government. Because I had been complaining loudly and vehemently during... Just a minute, just a minute. What page are you on? I'm on page two of five of the transcript. All right, go ahead. Okay. And prior to that, I, on behalf of the client, had been complaining loudly about the fact that they had not filed this 5K1. I didn't want to go into it in detail because it was reported present in the courtroom. However, I was asking the court to intervene here. In other words, there had to be somebody who stands between the power of government and their discretion, which is not unbridled discretion, to provide this defendant with what he was, we say, guaranteed pursuant to the plea agreement because he did cooperate. But how can you say guarantee in light of the language that Judge Kleinfeld read to you? That is anything but a guarantee. It's a specific clarification that no promise has been made. I fully understand that. However, I think that once a defendant completes his obligation, which he guaranteed when he signed his plea agreement, that is to offer truthful, complete, substantial information, then I think that the bird shifts to the government to show that they don't have that duty. I understand the government argues in their brief that, well, no, it's a power and not necessarily a duty. But we are contending here that once he provided this information, I'm asking the court, this court needs to review the conduct of the government. I don't really see how we get law that says we review it. If the government acted in bad faith pretty consistently on these, then people would quit making cooperation deals. But if you look at the colloquy again, at sidebar, now, it was the government who says, let's go to sidebar, Judge. So Judge Siebel allows that. And then what the government says is, well, he did cooperate. He wants to let the court know he cooperated and that it was a matter of timing in this particular matter. Well, then he goes on to say he has debriefed. He's cooperated. We anticipate things coming down in the future. And I say that because, as the court knows, in another matter, unless we can establish somebody has been indicted, arrested for other convictions, we're not going to be filing a 5K1. Let me ask you this. At that point, why didn't you then ask for a continuance of the sentencing hearing so that these things could come to fruition and the government could still file a timely 5K1? That's a good question. I'm glad you've asked that. Well, what's your answer? Do you have a good answer for it? The answer is because the government complained that I had continued this case now three times prior to sentencing. The first two times were to allow for this debriefing to take place. It was not the fault of my client. It was a matter of trying to get the DEA, the government, and myself over to Basin because, unfortunately, in Montana, we're going to be traveling some distance to meet with our clients before they're held. Well, that wasn't the fault of the defendant. But the DEA did, in fact, go down there. And at some point in time, did speak with the man prior to sentencing. They took every bit of information that he had. There was no doubt that that information was going to be old, in the words of the government, because he had been out for 14 months under specific pretrial releases. Do you expect at this point anything more will be asked of your client? Well, if you go further in this colloquial sidebar. Well, forget the colloquy. I mean, what's happened since then? Anything? Okay, well, since that time, I did have a conversation with the government about this very appeal and whether we would go forward with it or not. Of course, I said, yes, we are going to go forward with it unless we go and get a Rule 35 here within the year's period of time that's required by the rules. Have you filed the Rule 35? That was up on November the 3rd. So the answer is no. Right. At that point in time, the government says, well, we're still working on it. We're still looking into it. And I was referred to the state prosecutor because maybe they were looking into some aspects of the case. But under Rule 35, that one-year time bar cannot be extended, can it? That's my understanding, Judge. And, of course, that happened on November the 3rd. But if you go to these other parts. So we're now, what, two years plus down the road still waiting for you? Well, that was, no, it was November 3rd, 2007, I believe, that that was up. No, I understand. But since he was arrested, has more than two years passed? Yes. Yes, that's true. How much more time does he need before these things come to fruition? I guess. I can't answer that because it's a government investigation. But I would like to reserve some time for the end. One more question, and if you remember the answer, tell me now, and if not, later. Was anything said at the change of plea proceeding about whether he had a promise or not for 5K1.1? No, that was gone over, I think, adequately by Judge Siebel. He does that at sidebar. He covers the plea agreement specifically based on the language, and he reads it to the defendant. And, again, our position that when he signed that plea agreement, the government knew that he was going to cooperate. But they tell the judge very specifically, I wanted to express for the record specifically, when you're going to inform the defendant he has a right to appeal, in other words, this is to influence the defendant whether he will appeal or not. But things are also happening down the road. So there is a statement by the prosecution saying, okay, cooperation will be utilized. But what they're doing is confusing the temporal strictures of Quatch and the down. Well, Quatch, he had a deal. If he cooperates, he'll get a 5K1.1. Right. This one he didn't. He didn't give him the 5K1. And that ties back to my question. At that point, it seems to me if you know that sentencing cuts off your right to get a 5K1 departure, then it seems to me that it's incumbent on defense counsel at that point to ask for a continuance or to ask the court to make the prosecutor declare clearly I am not going to be moving for a 5K1. I think the government made that very clear that it was not moving for a 5K1. That's how I read it. Right. So then I guess I'm asking the same question again. Why isn't it then incumbent at that point on you to ask for more time before sentences impose? Because by that time I had exhausted what time we had left pursuant to the plea and the time set for sentencing with the continuousness in between. My time had cooperated. I thought I had fulfilled that. Nothing prevented you from asking Judge Siebel. I didn't ask for continuance because I still believed that we had the right to appeal and which is exactly what we did. I was seeking some higher authority that would come in and intervene and force the government to do what it bargained to do at the plea. Okay. Thank you, counsel. Thank you. Good afternoon, Your Honors. Eric Wolf for the United States. There are two issues presented by Mr. Jones. The Court has very thoroughly covered the second issue, which is breach of the plea agreement. There's no breach of the plea agreement because it doesn't say you're guaranteed a 5K. Well, you know, it depends on how you read these cases, you know, Quatch and Awad. And the government has some obligation, right? Yeah, the government has a good faith obligation. The government can't have an unconstitutional motive. No, no, no, no. More than that, you have to weigh the defendant's cooperation up to that point, right? Correct, correct. And then at that point, you know, decide whether it merits the making of a motion. That's right. And the transcript doesn't disclose it. That's what the government did. All the government says, well, it's too early. You know, we can't tell. You know, we'll have to wait until afterwards. I disagree with that interpretation of the transcript, Your Honor. The line that's drawn in Quatch, Brown and Awad is you can't refuse to determine. And that's a very narrow category. It's one of the very narrow ways to challenge the refusal to file a 5K. And Mr. Jones is trying to shoehorn his case into those circumstances and say, well, that's what we're talking about here. All right. Now I guess it's your position that those cases don't apply here. They don't. It was determined that it was not substantial assistance. Now tell me why they don't apply. Did the government, you know, evaluate the cooperation up to that time? Yes, the government did. And make a decision on the merits? Yes. Rather than just saying, well, you know, we have to wait? No. The issue here, and Mr. Jones knows this because he speaks to it in his own sentencing memorandum, is that after multiple continuances, he debriefs. He basically doesn't tell the agents anything they don't already know. He doesn't provide information that's going to go out there and assist in some other prosecution that's likely to be brought. The government determines. This is not a refusal to determine. The government determines that it's not substantial. And if I could just put this case in a little bit. See, that's not on the record anywhere. You know, we made a determination that the assistance is not substantial. The prosecutor tells the judge, he says this is a timing issue, and they want to construe that as, oh, well, they're just waiting to do a Rule 35. They haven't determined it at all. They know. They've talked with the agents. They know. The agents have said it's old. When you say they, you mean the defendant? Yeah. It's right in his sentencing memorandum. And he actually mentions it. Mr. Selby mentions it at the sentencing itself. This is excerpts of record tab 3, page 10. This is, they're telling us that it's old. Well, yeah. They're telling you it's not substantial, and then we're not filing the motion. Now, with the prosecutor. Let me just, I want to make sure you agree with this. Mr. Selby just told us that he believed that the government refused to file a 5K1 motion at the point where Mr. Sikora is talking to the court at page 3 of the sentencing. That's his interpretation of it. So you don't agree, is my question. No, I don't agree with that. So you don't think that Mr. Sikora was refusing to file a 5K1? No. I mean, he was refusing to file a 5K because he didn't think the assistance was substantial. So is the answer yes or no, Mr. Selby? Here's the line, okay? If you refuse to determine. I'm not talking about a line. I just want an answer. Yes or no, do you agree with Mr. Selby? Did the government refuse at that point to file a 5K1? There are two issues of refusal, Your Honor. One is, are you refusing to make the determination at all? And the other is, are you refusing to file, having made the determination? We made the determination, which is what takes us out of cases like Awad, but we refused to file it because his assistance was not substantial. All right. So you're saying this record can fairly be read to infer that, you know, Mr. Sikora represented that the government has made a determination on the merits, and our determination is that because it's all and so forth, it doesn't amount to substantial assistance. I mean, you're saying. Yes. The record is fairly susceptible to that reading? Well, could the record be better? Absolutely, Your Honor. But the reality of these 5K issues is that the burden is theirs. They have to come up with some prima facie showing before the government has to start putting cards on the table. And they have shown nothing. They actually, you know, with all due respect to Mr. Selby, I don't have any document in the record, I don't have any colloquy of sentencing or anywhere else that explains the supposedly substantial assistance and why it's just so wonderful for the government. It's not in his sentencing memorandum. He said it again and again to this Court. But what was it that Mr. Jones disclosed that was so good and absolutely necessitated a 5K motion? If I could just provide a broader context. Did he provide complete, truthful, forthright, material, important, valuable, and meaningful information to the best of his knowledge and belief? I have no indication from anyone on the case that he provided something that was untruthful or that he was hiding things. The problem was he didn't provide anything valuable. So this is not a case where a defendant has said he'll cooperate and then didn't. It's a case where a defendant did his best but it wasn't worth anything because he didn't know anything. Well, what he knew was not valuable. He's a meth manufacturer. He buys pseudoephedrine or has people buy it for him at Target and Wal-Mart. Mr. Hoff, here's one of the problems that we're faced with, and I think Judge Kleinfeld has sort of alluded to this because he's really, I think, reading from paragraph 15 of the plea agreement, which defines substantial assistance. And the definition in the plea agreement has nothing to do with, you know, how valuable the assistance is. It just says, you know, he has to perform this dance and go through certain steps. And he's done all that. And so you would think what he did meets the definition of substantial assistance because it says substantial assistance means, and it has three bullet points. Right. And one of them is it has to be valuable. What does it say has to be valuable? I'm at 15A, page 13, second bullet point. Valuable and meaningful information. So are you saying that then this case turns on that Mr. Sikora's assessment that it's not valuable? Yes. So you would put Mr. Jones, who you just told us is a big-time meth maker. He's not a big-time meth maker. And that's part of his problem. I read the presentence report. There's a lot of people that he's involved with. Well, he has people who go to these stores like Walmart and Target and buy him pseudoephedrine. Buy him pseudoephedrine. Right. He gets the precursor chemicals to make the methamphetamine. Sure. Okay, so you would put him in the same category as the drug courier that gets picked off at the border who doesn't know anything other than the fact that somebody gave the courier a suitcase and $500 and said, carry this from Mexico to California. He winds up being that way because in his small pond, he's the biggest fish. He's manufacturing meth. He has other people who run it. Other than these people who buy precursors, he doesn't have any big guy above him. He's making it in a shed out by Roundup, Montana. And he makes a lot of it. He must have figured out how to do it pretty well. But one of the people he's making it with is this guy Peterson, and Peterson debriefs. And so what does Jones have to offer? Well, I mean, hypothetically here, Jones can say, well, I manufacture here, here, and here, and these people help me. Well, hypothetically, if agents go check on that stuff and they don't have anything that corroborates a guy who just got a 240-month sentence and who is a convicted drug dealer and has every reason to want to save his own skin, how valuable is that information? Not very. Like, are you really going to go out and charge those other people? And that's the type of cost. You mean the people he sends to Walmart for the Sudafed? Let's say he told you about some that you didn't know about, and the only word you have is his. So all he gave you and all he can give you is who he sent to Walmart to get Sudafed for him. One of his problems is that he didn't have much information to give. I'm trying to be more concrete. The word information embraces everything in Wikipedia, I suppose. Here's the problem, Your Honor. I want to know, is what we're talking about the names of the people that he sent to Walmart, he gave you, and he had nothing else to give you? Where he cooked it. That's my understanding. But here's, that is an issue. That is an issue. Can I just, if I can push eject for just a second? I mean, this is the problem. We forget our questions before you answer them. I'm sorry. But this is the problem with these 5K things. He's supposed to make, it's his burden, not mine. I don't have to come here. Trying to hold on to Judge Tallman's question. I'm sorry. So eager to find out the answer. I'm sorry, Your Honor. But that's the problem. People that he sold it to, maybe who were also sellers themselves. Yeah, I mean, he can give information like that. It can be complete. Can he give it to you? My understanding is he gave information like that, yes. Okay. But it still wasn't worth much to you because you already knew that. Nothing has come of it, is my understanding. He did not get a Rule 35. Well, he didn't file one, so he's not going to get one to respond. Do I understand from your brief and what Mr. Secura said at the sentencing that there's like an informal rule in your office that unless the information results in a prosecution, it's not substantial, something like that? I'm not aware of a rule that's that strict at all. But obviously that type of thing. Here's the thing. Can you give me some general idea of what the cutoff point is of, you know, between substantial and not substantial? I am not on the 5K committee. I don't review those motions. I can't tell you. If the court would like that information, I can write a letter. If there are no further questions. I'm wondering about the system effect. If we were to publish something in this, which I don't know if we would or not, when I read your deal, it looks like there's no deal. It's a seduction. You give us everything you have, and we'll decide whether we want to do anything for you, and we don't promise to. If the way it works out is that we interpret that to mean there is no promise for 5K 1.1, even if he gives everything he's got, and even if some prosecutor who felt like prosecuting people who bought Sudafed at Walmart would have enough to lead to them, if this prosecutor doesn't feel that it's worth prosecuting, then it's not substantial. Now, if we do that, I guess the system effect is the government's protected from being held to a promise where it expressly disavowed the promise. On the other hand, the defense bar knows that these kinds of 5K 1.1 provisions in plea agreements are totally worthless, and no one should cooperate. I'm over time. Go ahead and answer. Number one, the government's promises are always backed up by good faith, and as was discussed earlier, if the government is playing fast and loose, then the government's going to have a hard time getting people to sign up for pleas, and the government has a huge interest in getting people to plead guilty because trials, we can't have too many trials or we won't prosecute very many people. So those systemic realities affect the government's adherence to giving 5Ks where they're warranted, including their duty of good faith. Secondly, it is just a reality that if you get an agreement like this where you're counting on a substantial assistance motion and you haven't debriefed already and you haven't had any DEA agent tell you, boy, this is really important information, this is really going to help us, when you sign that agreement and all you have in the back of your head is what you know, you have to make a decision. Either is it really good, and am I going to tell it? There are plenty of defendants that want to tell just enough to get the 5K, but not too much more. And there are others who think that they can talk, maybe they can even go down to the jail and listen to some conversations and then talk. They're hoping, they're hoping, triumph of hope over experience. And so they'll go ahead and sign on for one of these deals, even though the reality is nothing is ever going to come to it. But that's the defendant's calculation. And if he has really good information and it's going to lead to other people, a lot of them it already has by the time they plead guilty, then they're going to get the motion. But the problem with Mr. Jones, as I understand what you're telling us, is he told you everything he knew. It really just wasn't worth that. That's right. And that happens, too. That happens, too. And like you mentioned, the safety valve, the safety valve is there to protect people like that. But Mr. Jones doesn't fall into that category because he's dealt drugs before. Okay. Thank you, counsel. You went over your time, but if you need 30 seconds to rebut something that you think was mistaken, go ahead. The reason the word old wasn't because Mr. Sikora and I got in a heated argument just prior to sentencing when I was demanding the 5K1. He said, well, the information was old. Well, the thing is, he obviously knew the information was going to be old because my client had been arrested 14 months previously, had been released to the custody of his father, and he had been told very specifically not to associate himself with anybody else that he'd been previously associated with. So the best he could do was his story. So he provided everything he possibly knew from 14 months prior thereto, which was substantial information. He sat with the DA. He pointed at pictures. He told everybody who was involved with him one way or the other or otherwise. And we believe that he was going to get the 5K1. We're told, no, the information is old. But the record does not disclose any of what Mr. Sikora put in his brief regarding the timing issue. If we give a hand to Judge Siebel, he's going to hold a hearing, and if the evidence at that hearing establishes what Mr. Wolfe has told us, then the government will still be able to say, in the exercise of our discretion, we're not giving a 5K1 motion here, and you're stuck, aren't you? As long as the court determines that they're not making that determination in bad faith. That's going to be contrary, however, to what the government told Judge Siebel at sidebar, in that this case was ongoing and that something was going to happen in the future with my client.  Well, again, unless the court finds that Mr. Sikora's statement was made in bad faith, then you're out of luck, aren't you? Then I would ask the court to give us the relief that we're asking for in our briefing. We can't order the government to give you a 5K1 motion. All we can do is remand, if it's appropriate, for an evidentiary hearing on whether or not they refused in bad faith to make it. That's the relief that we asked for in our briefing, and I think that's an appropriate relief to be granted because I think that the government should be held to what they said to the judge because they didn't say anything to the judge about it was insubstantial, it was untruthful, or less. In fact, they said he cooperated, meaning he had given them everything he had, and, again, indicating that perhaps it would be forthcoming of Rule 35. And that's very important information for this court, and it certainly is worth delving further. The government says, I didn't object. Yes, I did object. It's in the transcript of the sentencing. I filed a sentencing memorandum. We're saying he's entitled to his 5K1, and we set it aside. The defendant himself says, I don't think I understand. If the information is valid, how come I'm not getting my 5K1? What the government does at that point in time is what the government did exactly in Quash, and that is confuse the temporal strictures that are required. They were saying, oh, yeah, we've evaluated, but we're still continuing to evaluate it. That's the essence of the transcript, and that's what it's showing, that we're continuing to evaluate his cooperation, and there's going to be something coming down the road, and so, therefore, we maybe think it's useful then, and then we'll use it. So I think for the government to stand up here and say that my government had nothing important to provide is absolutely wrong. He did, and the government made those representations to the court at sidebar, and I stand by the record. Thank you, counsel. Thank you very much. United States v. Jones is submitted.
judges: Kleinfeld, Tashima, Tallman